IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUNGARD FINANCIAL SYSTEMS INC. | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-CV-4332 |
| v. | : | |
| J.B. OXFORD & COMPANY | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

**PLAINTIFF SUNGARD FINANCIAL SYSTEMS INC.'S REPLY BRIEF
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff SunGard Financial Systems Inc. ("SunGard"), respectfully submits this Reply Brief in Further Support of its Motion to Dismiss Defendant J.B. Oxford & Company's ("Oxford") Counterclaim, in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Oxford's Memorandum of Law in Opposition to SunGard's Motion to Dismiss fails to adequately address the core legal arguments advanced by SunGard. In short, Oxford's counterclaim for misrepresentation must be dismissed for three reasons: (1) the economic loss rule bars a claim for fraud or misrepresentation because a written contract exists between the parties; (2) the parol evidence rule bars Oxford from relying upon alleged fraudulent misrepresentations or omissions made prior to the

execution of, but not incorporated into, the Agreement; and (3) the fraud claim is not stated with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. For these reasons and as explained more fully below, Oxford's Counterclaim is legally insufficient and must be dismissed.

### A. The Economic Loss Doctrine Mandates Dismissal of the Fraud Claim.

In its initial memorandum, SunGard argues that the economic loss doctrine clearly bars Oxford's misrepresentation counterclaim under Pennsylvania law because it is rooted in contract. Oxford cites one case from a state court in support of its argument that "where plaintiff has claimed intentional misrepresentation, courts have been loathe to dismiss claims under the economic loss doctrine." Oxford's Mem. at 8. Oxford misconstrues the law in Pennsylvania regarding the economic loss doctrine.

Subsequent to the case cited by Oxford, the Third Circuit Court of Appeals recently concluded that "the Supreme Court of Pennsylvania would apply the economic loss doctrine to intentional fraud cases." Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d Cir. 2002). The court explained:

> The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between tort and contract law. Carving out an exception for intentional fraud would eliminate that check on liability and blur the boundaries between the two areas of law, thus exposing manufacturers to substantially greater liability. *In light of these realities, we select the path that limits liability by rejecting appellants' request for an intentional fraud exception.*

> Based on these reasons, we believe the district court correctly applied the economic loss doctrine to appellants' fraudulent concealment claims. Therefore, we will affirm the district court's order with respect to appellants' common law fraudulent concealment claims.

Id. at 680-81 (emphasis added); see also Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995) (holding that the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."). These decisions are in keeping with decisions from Pennsylvania courts (and the growing majority of jurisdictions since the United States Supreme Court's 1986 decision in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986)) that preclude an action of intentional misrepresentation where the parties have expressed their agreement in a written contract.

Accordingly, given the clear and controlling law in Pennsylvania precluding the recovery of purely economic losses in tort, Oxford's misrepresentation claim is ripe for dismissal.

### B.   The Parol Evidence Rule Also Bars Oxford's Counterclaim.

Oxford takes the position that the parol evidence rule does not apply here because a "fully integrated contract" does not exist. Oxford's Mem. at 9. Ignoring the Remote Processing Agreement attached to SunGard's Complaint and the provisions contained therein which belie its argument (Oxford calls this negotiated contract "simply irrelevant"), Oxford attempts to stave off dismissal of its

3

misrepresentation counterclaim as "premature." Id. Oxford's position throughout its response is essentially that it now claims it did not understand what it was buying – SunGard's "Phase3 System." Despite the presentations and numerous meetings Oxford has described in its Counterclaims (¶¶ 40-43), Oxford would have this Court believe that it was willing to commit millions of dollars to a project over a several year period, but there was "never a meeting of the minds" as to what it was buying. Oxford's Mem. at 6-7.

As SunGard explained in its initial memorandum in support of its motion to dismiss, Oxford's misrepresentation claim is based on alleged oral representations as to the functionality and implementation of the Phase 3 system, as well as anticipated conversion dates discussed orally that are not part of the written agreement between the parties. Oxford concedes as much in the Counterclaim by acknowledging that: "SunGard made these representations orally and in sales materials." See Counterclaim at ¶ 53. Again, Oxford puts in plain words in its brief that its misrepresentation claim is based upon the "detailed and comprehensive oral and written representations to J.B. Oxford" made by SunGard in describing the capabilities of the Phase3 System prior to the execution of the Remote Processing Agreement. Oxford's Mem. at 3. Remarkably, Oxford later claims there is "no enforceable contract governing the dispute in this case." Id. at 7.

None of the alleged representations made by SunGard to Oxford that form the basis of Oxford's Counterclaim are found in the Remote Processing Agreement,

4

which governs the entire relationship between the parties.  See Agreement, Section 9.6, Exhibit A to Complaint ("This Agreement . . . states the entire understanding between the parties with respect to its subject matter, and supersedes all prior proposals, marketing materials, negotiations and other written or oral communications between the parties with respect to the subject matter of this Agreement.").  The parol evidence rule was designed to defeat counterclaims like the one advanced by Oxford here inasmuch as Oxford is seeking to add terms and conditions to the contract which are not in the Agreement.  See Winters v. Investment Sav. Plan of Knight-Ridder, 174 F. Supp. 2d 259, 263 (E.D. Pa. 2001) ("Here, plaintiff's argument that she was fraudulently induced into signing the agreement is barred by the parol evidence rule, and the Court cannot consider it").

Accordingly, this Court must dismiss Oxford's fraud counterclaim because the parol evidence rule bars Oxford from changing or adding terms and conditions to the Agreement, or from relying upon alleged representations or omissions prior to the execution of the Agreement.

    **C.**    **The Counterclaim Also Fails to Comply With Federal Rule Of Civil Procedure 9(b) By Not Alleging Fraud With Particularity.**

SunGard reiterates here that Oxford's counterclaim provides no precision or substantiation about the alleged fraud.  The Counterclaim merely refers to "factual misrepresentations," but provides no factual allegations as required by Rule 9(b) of the Federal Rules of Civil Procedure.  See Counterclaim at ¶¶ 53-58.

In its brief, Oxford argues that based upon a single case, <u>McHale v. NuEnergy Group</u>, 2002 WL 321797, *3 (E.D. Pa. Feb. 27, 2002), it "need not allege such details as the 'date, place, or time.'" <u>See</u> Oxford's Mem. at 11. The <u>McHale</u> court did not actually lower the pleading bar as much as Oxford believes. While the <u>McHale</u> court acknowledged that "allegations of 'date, place, or time' fulfill these functions [of placing defendants on notice of the precise misconduct with which they are charged]," a plaintiff is free "to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>Id</u>. However, Oxford has done neither. Indeed, the Counterclaim does not state with specificity any particulars about the time, place and content of the allegedly false representations nor any substantiation as to their allegations of fraud. Instead, Oxford simply alleges ambiguous "factual misrepresentations." <u>See</u> Counterclaim at ¶¶ 53-58. Accordingly, this Counterclaim fails to provide the requisite specificity required by Rule 9(b) and should be dismissed.

## CONCLUSION

For the above reasons, as well as those set forth in SunGard's initial brief, SunGard respectfully requests that the Court grant its motion to dismiss Defendant's counterclaim with prejudice.

Dated: November 26, 2002        Respectfully submitted,

BLANK ROME COMISKY & McCAULEY LLP

By:    /s/ James T. Smith
James T. Smith, Esquire
Michael E. Adler, Esquire
One Logan Square
Philadelphia, PA 19103
215-569-5500

*Attorneys for Plaintiff SunGard Financial Systems Inc.*

## CERTIFICATE OF SERVICE

I, Michael E. Adler, Esquire hereby certify that a true and correct copy of Plaintiff SunGard Financial Systems Inc.'s Reply Brief in Further Support of its Motion to Dismiss Defendant's Counterclaim, was hereby served this 26th day of November, 2002, via first class mail, postage pre-paid on the following:

>Mark S. Stewart, Esquire
>Ballard Spahr Andrews & Ingersoll, LLP
>1735 Market Street, 51st Floor
>Philadelphia, PA 19103-7599


                                                /s/ Michael E. Adler
                                            Michael E. Adler, Esquire